UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

IRIS MCCLAIN,

    Plaintiff,

v.

WELLS FARGO BANK, N.A.,
WELLS FARGO HOME MORTGAGE,
"WELLS FARGO,"
TIM SLOAN, *President & CEO of Wells Fargo Bank, N.A.*,
J.P. MORGAN CHASE & CO.,
J.P. MORGAN CHASE BANK, N.A.,
JAMES DIMON, *CEO of J.P. Morgan Chase & Co.*,
THE BANK OF NEW YORK MELLON,
GERALD HASSELL, *Chairman & CEO of The Bank of New York Mellon*,
GOLDMAN SACHS MORTGAGE CO.,
GOLDMAN SACHS GROUP, INC.,
LLOYD BLANKFEIN, *CEO & Chairman of Goldman Sachs Mortgage Co.*,
KRISTINE D. BROWN, ESQ.,
GREGORY N. BRITTO, ESQ.,
ROBYN A. MCQUILLEN, ESQ.,
WILLIAM M. SAVAGE, ESQ., *Managing Partner of Shapiro & Brown Alt, LLP*, and
LILA Z. STITELY, ESQ.,

    Defendants.

Civil Action No. TDC-17-1094

## MEMORANDUM OPINION

Plaintiff Iris McClain, who is self-represented, has filed suit against 16 Defendants based on what she asserts is a history of fraudulent dealing related to her mortgage for a property located on Herrington Drive in Upper Marlboro, Maryland ("the Property"), to foreclosure actions on the Property, and to several bankruptcy actions. McClain sues Defendants Wells

Fargo Bank, N.A. and Wells Fargo Home Mortgage; Timothy Sloan, the President and Chief Executive Officer of Wells Fargo Bank N.A.; J.P. Morgan Chase & Co.; J.P. Morgan Chase Bank, N.A.; James Dimon, the Chief Executive Officer of J.P. Morgan Chase and Co.; the Bank of New York Mellon; and Gerald Hassell, the Chairman and Chief Executive Officer of the Bank of New York Mellon (collectively, "the Wells Fargo Defendants") based on her grievances about a 2007 modification to her mortgage loan, the subsequent servicing of that loan, as well as allegations relating to their conduct during the pending foreclosure on the Property and during two of her bankruptcy cases. McClain sues the Goldman Sachs Group, Inc. and Lloyd Blankfein, Chief Executive Officer and Chairman of Goldman Sachs Mortgage Co. (collectively, "the Goldman Sachs Defendants"), and Goldman Sachs Mortgage Company ("GSMC"), on substantially the same basis. Lastly, McClain sues Kristine D. Brown, Esq.; Gregory N. Britto, Esq.; Robyn A. McQuillen, Esq.; William M. Savage, Esq.; and Lila Z. Stitely, Esq. (collectively, "the Attorney Defendants") for alleged fraud relating to the foreclosure and her multiple bankruptcy proceedings.

McClain asserts 11 claims against various combinations of Defendants. Specifically, she asserts claims for (1) fraud; (2) conspiracy to commit fraud; (3) a violation of the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601–1667f (2012); (4) unjust enrichment; (5) negligent infliction of emotional distress; (6) a violation of the Protection of Homeowners in Foreclosure Act ("PHIFA"), Md. Code Ann., Real Prop. §§ 7-301–7-325 (West 2012); the Maryland Mortgage Fraud Protection Act ("MMFPA") Md. Code Ann., Real Prop. §§ 7-401–7-409; and 12 C.F.R. § 1015.4(c) ("Regulation O"); (7) a violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968 (2012); (8) a violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692-1692p; (9) bankruptcy fraud; (10)

foreclosure fraud; and (11) a violation of "Advocate Rule 3.3(A)(1)." Am. Compl. at 60, ECF No. 45-1. The Wells Fargo Defendants, the Goldman Sachs Defendants, GSMC, and the Attorney Defendants have each filed separate Motions to Dismiss. At the close of the briefing on the Wells Fargo Defendants' Motion, McClain filed a Motion for Leave to File a Sur-Reply to the Wells Fargo Defendants' Reply. Having reviewed the Complaint and the briefs, the Court finds no hearing necessary. *See* D. Md. Local R. 105.6 (2016). For the reasons set forth below, the Motions to Dismiss are granted, the Motion for Leave to File a Sur-Reply is denied, and the case is dismissed.

## BACKGROUND

McClain purchased the Property through a mortgage loan in 1997. The loan was subsequently securitized into a mortgage-backed security held first by J.P. Morgan Chase Bank and then by the Bank of New York Mellon ("BNYM"). Wells Fargo Bank, N.A. ("Wells Fargo") acts as the mortgage servicer on behalf of BNYM. In 2006, McClain fell behind on the mortgage. In January 2007, she contacted Wells Fargo to discuss options to bring her loan current, and in July 2007 she signed a loan modification agreement that changed her adjustable-rate mortgage to a fixed-rate mortgage. That loan modification, submitted by McClain as part of later bankruptcy proceedings, provides that McClain's mortgage loan will accrue interest "at a yearly rate of 7.000%." Am. Objection to Third Am. Proof of Claim, Ex. A, *In re McClain*, No. 09-22554 (Bankr. Md. 2009) (Dkt. No. 95-1).[1] According to McClain, what ensued after she signed the modification were a series of misrepresentations and mishandling of her payments on the part of Wells Fargo representatives.

---

[1] The Court takes judicial notice of McClain's bankruptcy proceedings pursuant to Federal Rule of Evidence 201(b)(2).

In March 2008, still behind on her mortgage, McClain attended a foreclosure prevention seminar hosted by Wells Fargo. At that event, she was told by a representative that she did not qualify for a second loan modification because, based on her 2007 modification, her interest rate had already been converted from an adjustable rate to a fixed rate. Later that same day, McClain reviewed her 2007 loan modification and, in her estimation, found no language converting her mortgage to a fixed rate.

McClain argues that her loan modification agreement was part of a fraudulent scheme devised by Wells Fargo, on advice from Goldman Sachs, to profit from distressed homeowners. She asserts that as a result of this loan modification, she has had to pay several thousands of dollars in fees that she would not otherwise have had to pay, and also has been locked into a fixed interest rate of 7 percent, which is higher than the rate she had prior to the modification and higher than what average mortgage rates have been in subsequent years, thus requiring her to pay more in interest on her mortgage than she would have had she not agreed to the loan modification.

In 2009, McClain filed a Chapter 7 bankruptcy petition in the United States Bankruptcy Court for the District of Maryland ("the bankruptcy court"). *In re McClain*, No. 09-22554 (Bankr. Md. 2009). As part of that proceeding, she contested Wells Fargo's claim against the bankruptcy estate for the balance of her mortgage loan, asserting, as she does in this case, that Wells Fargo misinformed her about the terms of her loan modification and misapplied her payments. Am. Objection to Third Am. Proof of Claim, *In re McClain*, No. 09-22554 (Bankr. Md. 2009) (Dkt. No. 95). McClain, who was represented by counsel in those bankruptcy proceedings, later withdrew her objection with prejudice. Consent Order Resolving Objection to Proof of Claim, *In re McClain*, No. 09-22554 (Bankr. Md. 2009) (Dkt. No. 117). McClain also

alleges that as part of that 2009 bankruptcy process, attorneys working on behalf of Wells Fargo promised her a new loan modification, but that the offered modification never materialized and was then denied. That bankruptcy case was closed in 2012.

According to McClain, "[p]erhaps late 2012," the law firm employing the Attorney Defendants, at the behest of Wells Fargo, engaged in improper debt collection practices relating to her past due mortgage loan. Am Compl. ¶ 210. In November 2013, foreclosure proceedings were initiated against the Property in the Circuit Court for Prince George's County, Maryland. *BSBSC v. McClain*, No. CAEF13-33714 (Cir. Ct. Prince George's Co. 2013). That proceeding is ongoing but is presently stayed based on a later bankruptcy petition filed by McClain.

According to McClain, on February 18, 2014, she received correspondence from a Wells Fargo representative in response to a complaint from McClain. The letter assured her that her mortgage loan was being accurately billed according to the terms of the adjustable rate note, which McClain took as confirmation that her loan modification was not supposed to have changed the interest rate from an adjustable rate to a fixed rate. McClain also asserts that in May 2015, as part of bankruptcy proceedings, she received a marked-up copy of her 2007 loan modification agreement with various margin notes revealing that Wells Fargo and Goldman Sachs "keep 2 sets of books." Am. Compl. ¶ 30.

In March 2015, McClain, proceeding *pro se*, filed a Chapter 13 bankruptcy petition ("the 2015 bankruptcy case"). *In re McClain II*, No. 15-13657 (Bankr. Md. 2015). In June 2016, the bankruptcy court denied confirmation of McClain's Chapter 13 plan without leave to amend, and in September 2016, her petition was dismissed and the case closed. Days later, McClain, initially represented by counsel and then later proceeding *pro se*, filed another Chapter 13 bankruptcy petition ("the 2016 bankruptcy case"). *In re McClain III*, No. 16-22179 (Bankr. Md.

2016). On October 31, 2017, BNYM filed an Objection to Confirmation of Plan in that case in which it asserted that McClain owed over $170,000 on her mortgage loan, although she had scheduled the debt for only $80,000. That Objection was signed by attorney Robyn McQuillen of Shapiro & Brown, LLP, on behalf of herself and co-counsel Kristine Brown, William Savage, Lila Stitely, and James R. Meizanis.

On May 11, 2017, as part of the 2016 bankruptcy case, McClain filed a motion requesting that the bankruptcy court disallow that Objection as to her mortgage loan. In that Motion to Disallow, she alleged that BNYM's statements about the terms of her modified loan and the amounts due were incorrect.[2] The following day, she filed a Motion for Sanctions, asking the bankruptcy court to prosecute Defendants McQuillen and Brown, as well as her own attorney, for misconduct in both the 2015 and 2016 bankruptcy cases, which she asserted had prevented her from receiving bankruptcy protection. The bankruptcy court denied both motions. The 2016 bankruptcy case was dismissed on October 30, 2017. McClain has appealed that dismissal, focusing on her contention that BNYM's Objection should have been dismissed. *See McClain v. The Bank of New York Mellon et al.*, TDC-17-3397 (D. Md. 2017).

In February 2017, McClain filed the present suit in the Circuit Court for Prince George's County. After Defendants removed the case to this Court, McClain amended her Complaint. Among other relief, she seeks money damages; asks the Court to enjoin the pending foreclosure proceedings and any debt collection actions, declare the 2007 loan modification void, and cancel the debt on that loan other than the principal balance; and requests that the Court award her the

---

[2] In her Amended Complaint, McClain seems to suggest that this Objection was filed by Wells Fargo. However, it was filed by BNYM, which was the holder of McClain's mortgage, while Wells Fargo was her loan servicer. *See* Objection to Plan, *In re McClain III*, No. 16-22179 (Bankr. Md. 2016) (Dkt. No. 22).

6

attorney's fees and expenses she paid in the 2015 and 2016 bankruptcy cases. All Defendants seek dismissal of McClain's Amended Complaint.

## DISCUSSION

### I. Legal Standard

To defeat a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although courts should construe pleadings of self-represented litigants liberally, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), legal conclusions or conclusory statements do not suffice, *Iqbal*, 556 U.S. at 678. The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005).

In addition, because McClain's allegations sound in fraud, she is subject to the heightened pleading standards of Rule 9(b). *See* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). Under this heightened pleading standard, McClain must allege "the time, place, and contents" of the fraudulent representation, the identity of the person who made the misrepresentation, and "what he obtained thereby." *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999).

## II. Defendants without Allegations

McClain alleges no particular wrongdoing on the part of Defendants Sloan, Dimon, Hassell, or Blankfein other than that they were the leaders of financial institutions that she contends have engaged in unethical and illegal practices. McClain's Amended Complaint therefore fails to contain "a short and plain statement of the claim showing that the pleader is entitled to relief" against any of these Defendants. Fed. R. Civ. P. 8(a)(2). Even if McClain had included specific allegations against these Defendants, her claims would still fail, for the reasons discussed below. McClain's claims against these Defendants will therefore be dismissed.

## III. Mortgage Claims

The first seven causes of action asserted by McClain relate to her mortgage loan modification and the servicing of her mortgage loan. McClain asserts Counts One, Two, and Seven—fraud, conspiracy to commit fraud, and a RICO claim, respectively—against Wells Fargo Bank, N.A. and Wells Fargo Home Mortgage (collectively, "the Wells Fargo Entities"); and GSMC and the Goldman Sachs Group, Inc., (collectively, "the Goldman Sachs Entities"). In Counts Three, Four, Five, and Six—unjust enrichment, negligent infliction of emotional distress, a claim under TILA, and a claim under the PHIFA, MMFPA, and Regulation O, respectively— she adds J.P. Morgan Chase & Co. and J.P. Morgan Chase Bank, N.A. (collectively, "the J.P. Morgan Entities") and BNYM as Defendants. The Wells Fargo Entities, the Goldman Sachs Entities, the J.P. Morgan Entities, and BNYM each assert that these claims should be dismissed because they are outside the applicable statutes of limitations. They are substantially correct.

A statute of limitations argument is an affirmative defense that may be raised through a Rule 12(b)(6) motion if "the time bar is apparent on the face of the complaint." *Dean v. Pilgrim's Pride Corp.*, 395 F.3d 471, 474 (4th Cir. 2005). Such a motion should not be granted

"unless it is clear from the facts and allegations on the face of the complaint that the statute of limitations has run." *Litz v. Md. Dep't of Env't*, 76 A.3d 1076, 1086 (Md. 2013). *Accord Pilgrim's Pride*, 395 F.3d at 474.

Under Maryland law, "[a] civil action at law shall be filed within three years from the date it accrues unless another provision of the Code provides a different period of time within which an action shall be commenced." Md. Code Ann., Cts. & Jud. Proc. § 5-101 (2011). McClain pleads five state law causes of action: fraud, conspiracy to commit fraud, unjust enrichment, negligent infliction of emotional distress, and a statutory violation of the PHIFA and the MMFPA. As part of her PHIFA/MMFPA claim, McClain also references Regulation O. That regulation does not contain its own statute of limitations, so the Court must import one from the most analogous state law cause of action, which here is the PHIFA. *See, e.g., Owens v. Baltimore City State's Atty's Off.*, 767 F.3d 379, 388 (4th Cir. 2014). Maryland's general three-year statute of limitations for civil actions applies to each of the common law claims. Md. Code Ann., Cts. & Jud. Proc. § 5-101; *see Jason v. Nat'l Loan Recoveries, LLC*, 134 A.3d 421, 427–28 (Md. Ct. Spec. App. 2016) (unjust enrichment); *Hall v. St. Mary's Seminary and Univ.*, 608 F. Supp. 2d 679, 688 n.9 (D. Md. 2009) (noting that claims for intentional infliction of emotional distress and negligence are governed by Maryland's general three-year statute of limitations); *Fairfax Sav., F.S.B. v. Weinberg & Green*, 685 A.2d 1189, 1204–06 (Md. Ct. Spec. App. 1996) (fraud). Because the PHIFA and the MMPFA do not contain their own statutes of limitations, the general three-year statute of limitations applies to them and, by extension, to Regulation O. *See* Md. Code Ann., Cts. & Jud. Proc. § 5-101; Md. Code Ann., Real Prop. § 7-320 (providing a cause of action under the PHIFA but containing no statute of limitations); § 7-

9

406 (providing a cause of action under the MMPFA but containing no statute of limitations); *Owens*, 767 F.3d at 388.

McClain also pleads two federal causes of action, a TILA claim and a RICO claim. TILA has either a one- or three-year statute of limitations, depending on the provision of TILA allegedly violated. *See* 15 U.S.C. § 1640(e). RICO's statute of limitations for civil actions is four years. *Rotella v. Wood*, 528 U.S. 549, 553 (2000).

Under Maryland law, the statute of limitations period begins to run when the "plaintiff discovers, or through the exercise of due diligence, should have discovered, the injury." *Ver Brycke v. Ver Brycke*, 843 A.2d 758, 775 (Md. 2004) (quoting *Frederick Rd. Ltd. P'ship v. Brown & Sturm*, 756 A.2d 963, 973 (2000)). For federal claims, "a cause of action accrues when the plaintiff possesses sufficient facts about the harm done . . . that a reasonable inquiry will reveal [the] cause of action"). *Nasim v. Warden, Md. House of Corr.*, 64 F.3d 951, 955 (4th Cir. 1995).

Here, McClain's mortgage claims largely stem from her loan modification, which she asserts was fraudulent in that it converted her adjustable-rate mortgage to a fixed-rate mortgage without her knowledge, and resulted in the improper misapplication of the funds she paid pursuant to the loan modification and the imposition of various fees not properly disclosed. For example, her TILA claim asserts that Wells Fargo failed to disclose in a Truth-in-Lending Statement the true costs of the 2007 loan modification arising from the change to a fixed-rate mortgage. As she admits, the loan modification took place in 2007, and the instances of misapplication of funds and imposition of improper fees occurred at various points in 2007 and 2008. Based on the face of the Amended Complaint, McClain's mortgage claims, filed in 2017, therefore appear to be untimely.

McClain asserts, however, that the statute of limitations did not begin to run until 2014, because she was "kept in the dark" about Defendants' wrongdoing. Resp. Opp'n Wells Fargo Defs.' Mot. Dismiss at 11, ECF No. 77. To support this contention, McClain references a 2014 communication from Wells Fargo describing her mortgage as an adjustable-rate mortgage and her discovery, in 2015, of a marked-up copy of her 2007 loan modification that, she asserts, reveals that Wells Fargo was keeping two sets of books.

Even if the Court accepts McClain's assertion that she did not learn all facts relevant to her claims at the time of the loan modification, McClain's argument is undone by her 2009 bankruptcy proceedings, in which she raised substantially the same complaints about the handling of her loan modification and the servicing of her mortgage that she alleges here. Specifically, in her Amended Objection to the Third Amended Proof of Claim, filed on June 2, 2011, she asserted that she had been led to believe that her interest rate would remain adjustable, but that Wells Fargo was now treating her loan as having a fixed interest rate. She also asserted that Wells Fargo had misapplied funds she had paid, leading to improper late fees. Thus, McClain's own filings in that proceeding establish that by 2011, she had already uncovered the alleged fraud arising from the fixing of her interest rate and the misapplication of funds that are the basis of her claims here.

That McClain may have sustained monetary damages for several years after that original modification resulting from the application of the fixed interest rate and other terms of the loan modification does not change this analysis. "Accrual occurs when some evidence of legal harm has been shown, even if the precise amount of damages is not known, and even if plaintiff has suffered only trivial injuries." *Fairfax Sav.*, 685 A.2d at 1201–02 (internal citations omitted); *accord Nasim*, 64 F.3d at 955-56. "The dispositive issue in determining when limitations begin

McClain asserts, however, that the statute of limitations did not begin to run until 2014, because she was "kept in the dark" about Defendants' wrongdoing. Resp. Opp'n Wells Fargo Defs.' Mot. Dismiss at 11, ECF No. 77. To support this contention, McClain references a 2014 communication from Wells Fargo describing her mortgage as an adjustable-rate mortgage and her discovery, in 2015, of a marked-up copy of her 2007 loan modification that, she asserts, reveals that Wells Fargo was keeping two sets of books.

Even if the Court accepts McClain's assertion that she did not learn all facts relevant to her claims at the time of the loan modification, McClain's argument is undone by her 2009 bankruptcy proceedings, in which she raised substantially the same complaints about the handling of her loan modification and the servicing of her mortgage that she alleges here. Specifically, in her Amended Objection to the Third Amended Proof of Claim, filed on June 2, 2011, she asserted that she had been led to believe that her interest rate would remain adjustable, but that Wells Fargo was now treating her loan as having a fixed interest rate. She also asserted that Wells Fargo had misapplied funds she had paid, leading to improper late fees. Thus, McClain's own filings in that proceeding establish that by 2011, she had already uncovered the alleged fraud arising from the fixing of her interest rate and the misapplication of funds that are the basis of her claims here.

That McClain may have sustained monetary damages for several years after that original modification resulting from the application of the fixed interest rate and other terms of the loan modification does not change this analysis. "Accrual occurs when some evidence of legal harm has been shown, even if the precise amount of damages is not known, and even if plaintiff has suffered only trivial injuries." *Fairfax Sav.*, 685 A.2d at 1201–02 (internal citations omitted); *accord Nasim*, 64 F.3d at 955-56. "The dispositive issue in determining when limitations begin

to run is when the plaintiff was put on notice that he may have been injured." *Fairfax Sav.*, 685 A.2d at 1202. Thus, by 2011, McClain had actually uncovered facts underlying her fraud claims, and she had more than sufficient information to conduct a reasonable inquiry, exercising due diligence, that would have uncovered her conspiracy, unjust enrichment, TILA, and RICO claims, as well as the bulk of her negligent infliction of emotional distress claim. Thus, at the latest, McClain's mortgage claims based on her loan modification needed to be filed by 2014 or, for the RICO claim, 2015.

The only exception to this statute of limitations bar is McClain's claim for negligent infliction of emotional distress, which McClain bases in part on the BNYM proof of claim filed in her 2016 bankruptcy case. Even though this event is within the three-year statute of limitations, this claim cannot proceed because Maryland does not recognize a cause of action for negligent infliction of emotional distress. *Hamilton v. Ford Motor Credit Co.*, 502 A.2d 1057, 1066 (Md. Ct. Spec. App. 1986) ("[W]hile other jurisdictions may allow recovery under the concept of negligent infliction of emotional distress, Maryland does not.").

McClain's remaining mortgage claim is her claim under PHIFA, MMFPA, and Regulation O. McClain cites as the factual predicate for that claim the allegedly illusory offer of a loan modification made by Wells Fargo as part of her 2009 bankruptcy proceedings. According to McClain, the bankruptcy judge asked the parties to negotiate an agreement, and in 2009, attorneys for Wells Fargo falsely promised another loan modification and led her to believe over a lengthy period of time that it would occur, but ultimately revealed that the loan modification had been denied during a communication with McClain's counsel on "the evening before a 'drop-dead' date" set by the bankruptcy judge. Am. Compl. ¶ 172. At that point, any claim arising from an alleged promise to grant a new loan modification had accrued. Because

the 2009 bankruptcy proceedings closed on September 25, 2012, accrual necessarily occurred before that date. Accordingly, any fraud claim under the PHIFA, MMFPA, and 12 C.F.R. § 1015.4 had to be filed no later than September 25, 2015, so this claim is time-barred. All of McClain's mortgage claims are therefore dismissed.

### IV. Foreclosure and Bankruptcy Claims

#### A. FDCPA

McClain pleads a claim under the FDCPA against the Wells Fargo Entities, the Goldman Sachs Entities, the J.P. Morgan Entities, BNYM, and the Attorney Defendants. The FDCPA claim against the Wells Fargo Entities, the Goldman Sachs Entities, the J.P. Morgan Entities, and BNYM is fatally defective because, as her mortgage holders and mortgage loan servicer, these Defendants are outside the ambit of the statute. *See* 15 U.S.C. §1692a(6) (defining a "debt collector" as a person collecting a debt "owed or due another"); *Allen v. Bank of America*, 933 F. Supp. 2d 716, 729 (D. Md. 2013) (stating that, with exceptions not relevant here, "mortgage servicers are not 'debt collectors' under the [FDCPA]").

Moreover, all of the Defendants named in the FDCPA claim correctly argue that it is barred by the statute of limitations. A claim for a violation of the FDCPA must be filed within one year of the alleged violation. 15 U.S.C. § 1692k. McClain references 2012 as the date of the allegedly improper debt collection practices and does not identify any incident of debt collection within one year of the date of the Complaint. Notably, McClain was under bankruptcy protection for nearly the entire period from 2015 to the time she filed this suit and thereby benefited from an automatic stay of all debt collection efforts against her. *See* 11 U.S.C. § 362(a) (2012). Where McClain has not alleged any specific debt collection practices during the relevant time period, and where debt collection efforts were expressly barred because of her

bankruptcy petitions, there is no basis upon which this Court may infer that McClain has asserted a plausible FDCPA violation stemming from conduct within the limitations period. McClain's FDCPA claim is therefore dismissed.

### B. Bankruptcy Fraud

McClain sues all Defendants for what she terms "bankruptcy fraud," consisting of allegations that proofs of claim filed in her 2015 and 2016 bankruptcy were fraudulent, and that other documents were not properly served on her. A central part of this claim is her disagreement with the amount BNYM asserted she owed on her mortgage loan, a disagreement based on her underlying contentions as to the defect in the loan modification and loan servicing. McClain made substantially similar allegations in the 2016 bankruptcy case in her Motion to Disallow BNYM's claim and the Motion for Sanctions against the attorneys involved in the case. The bankruptcy court denied both motions.

"The judicial system's need for order and finality requires that orders of courts having jurisdiction to enter them be obeyed until reversed, even if proper grounds exist to challenge them." *Spartan Mills v. Bank of Am. Ill.*, 112 F.3d 1251, 1255 (4th Cir. 1997). This "firm and long standing" principle requires that a "challenge for error must be directed to the ordering court or a higher court, as the rules provide, but it may not be made collaterally unless it is based on the original court's lack of jurisdiction." *Id.* In *Spartan Mills*, the Fourth Circuit barred a collateral attack on orders issued by the bankruptcy court, noting that the plaintiff should have appealed those orders. *See id.* at 1255, 1258.

McClain's claim for bankruptcy fraud relies on arguments she previously raised that were rejected by the bankruptcy court, such that she may not obtain relief for those claims in this case. Bankruptcy judges are empowered to hear "core proceedings" in bankruptcy cases. 28 U.S.C. §

157(b)(1). Core proceedings include, but are not limited to, the "allowance or disallowance of claims against the estate," as well as any "other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor ... relationship." 28 U.S.C. § 157(b)(2)(B), (O). McClain's Motion to Disallow BNYM's claim falls squarely within the first category of core proceedings. Her Motion for Sanctions, filed because McClain believed attorneys involved in the bankruptcy proceedings were impeding her from securing bankruptcy protection, constitutes a matter affecting the estate assets or the debtor-creditor relationship. Because the bankruptcy court was acting within its jurisdiction when it denied McClain's motions as part of the 2016 bankruptcy case, McClain's recourse is to challenge those determinations, as she has, through her pending appeal, not to collaterally attack them through a claim of bankruptcy fraud in this lawsuit. *See Spartan Mills*, 112 F.3d at 1255. This claim will be dismissed.

### C. Foreclosure Fraud

McClain sues all Defendants for what she terms "foreclosure fraud," asserting that various documents were doctored or records fabricated in order to enable Defendants to foreclose on the Property. As a result of this alleged fraud, she asks that this Court declare the foreclosure proceedings, instituted in 2013 and still pending in the Circuit Court for Prince George's County, "null and void." Am. Compl. ¶ 251.

Generally, "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *McClellan v. Carland*, 217 U.S. 268, 282 (1910). However, when an action is *in rem*, "where the jurisdiction of the state court has first attached, the federal court is precluded from exercising its jurisdiction over the same *res* to defeat or impair the state court's jurisdiction." *Kline v. Burke Constr. Co.*, 260 U.S.

15

226, 229 (1922); *accord Marshall v. Marshall*, 547 U.S. 293, 311 (2006) (reiterating "the general principle that, when one court is exercising *in rem* jurisdiction over a *res*, a second court will not assume *in rem* jurisdiction over the same *res*"); *City of Orangeburg v. S. Ry. Co.*, 134 F.2d 890, 892 (4th Cir. 1943) ("[T]he court, state or federal, which first acquires jurisdiction over the subject matter of a suit *in rem* holds it to the exclusion of any other court until its duty is fully performed[.]") (citing *Kline*). Because a foreclosure proceeding was instituted in Maryland state court in 2013 and remains pending, Maryland first had jurisdiction over the Property. This Court is therefore precluded from exercising jurisdiction to resolve McClain's complaints about perceived irregularities in the pending foreclosure proceedings. This claim will be dismissed.

**D.     Advocate Rule 3.3(A)(1)**

In her last cause of action, McClain asserts that the Attorney Defendants violated what she calls Advocate Rule 3.3(A). In asserting that this claim should be dismissed, the Attorney Defendants interpret the claim as one under Rule 3.3 of the Maryland Attorneys' Rules of Professional Conduct ("MRPC"), codified at Md. Rules Attorneys, Rule 19-303.3. That Rule provides that "[a]n attorney shall not knowingly make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the attorney." Md. Rules Attorneys 19-303.3. As the Attorney Defendants point out, the Preamble to the MRPC expressly provides that "[v]iolation of a Rule does not itself give rise to a cause of action against an attorney." Md. Rules Attorneys 19-300.1 (Preamble) ¶ 20. Rule 3.3 therefore does not create a private right of action. *See Bochenski v. M&T Bank*, No. ELH-14-1031, 2015 WL 1040281 at *26 (D. Md. Mar. 10, 2015) (determining that there was no private right of action for an alleged violation of MRPC Rule 8.4(c)). This claim is therefore dismissed.

## V. Motion for Leave to File a Sur-Reply

In setting the briefing schedule for the Wells Fargo Defendants' Motion to Dismiss, the Court expressly instructed the parties that sur-reply briefs would not be permitted absent exceptional circumstances. *See* D. Md. Local R. 105.2(a). In her Motion, McClain seeks leave to make such a filing because she disagrees with various arguments and terminology used in the reply brief. Having reviewed McClain's arguments for a sur-reply, the Court concludes that no exceptional circumstances exist necessitating the filing of a sur-reply. The Motion is denied.

## CONCLUSION

For the foregoing reasons, the Motions to Dismiss filed by the Wells Fargo Defendants, GSMC, the Goldman Sachs Defendants, and the Attorney Defendants are GRANTED. The Motion for Leave to File a Sur-Reply is DENIED. The Amended Complaint is DISMISSED. A separate Order shall issue.

Date: March 8, 2018

THEODORE D. CHUANG
United States District Judge